UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Allstate Insurance Company,<br><br>              Plaintiff,<br><br>vs.<br><br>Lawrence R. Meadows, Roderick M. Cummings, Darryl Jerome Mattison, Zebulon Young, First Family Funeral Home, LLC, Fred Parker, and Taras Michael Parker,<br><br>              Defendants. | C.A. No. 8:19-cv-01082-BHH<br><br>**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**(Non-jury)** |

Plaintiff Allstate Insurance Company ("Allstate"), by and through its undersigned counsel, complaining of the Defendants Lawrence R. Meadows ("Meadows"), Roderick M. Cummings ("Cummings"), Darryl Jerome Mattison ("Mattison"), Zebulon Young ("Young"), First Family Funeral Home, LLC ("First Family"), Fred Parker, and Taras Michael Parker ( collectively "Defendants") respectfully alleges and states as follows:

## BACKGROUND

1.     Allstate is an insurance company organized and existing under the laws of the state of Illinois, with its principal place of business in the state of Illinois, and writes insurance policies in the state of South Carolina.

2.     Defendant Meadows is an individual who is a citizen of the state of South Carolina and resides in Spartanburg County, South Carolina.

3.     Defendant Cummings in an individual who is a citizen of the state of South Carolina and resides in Spartanburg County, South Carolina.

4.      Defendant Mattison is an individual who is a citizen of the state of South Carolina and resides in Anderson County, South Carolina.

5.      Defendant Young is an individual who is a citizen of the state of South Carolina and resides in Greenwood County, South Carolina.

6.      Defendant First Family is a limited liability company that was organized under the laws of the State of South Carolina on December 2, 2016, with its principal place of business in the State of South Carolina, and its members, Angela C. Meadows and Defendant Meadows, are citizens of the State of South Carolina.

7.      Defendant Fred Parker is an individual who is a citizen of the state of South Carolina and resides in Saluda County, South Carolina.

8.      Defendant Taras Michael Parker is an individual who is a citizen of the state of South Carolina and resides in Saluda County, South Carolina.

9.      The loss and claims at issue in this case arise out of incidents that occurred in South Carolina.  This case involves the interpretation of an insurance policy entered into in South Carolina and that insures interests in South Carolina.

10.     Jurisdiction exists because there is complete diversity of citizenship between Allstate and the Defendants, and the amount in controversy, including the potential costs of defending and indemnifying the Defendants, potentially exceeds $75,000.00.  Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

11.     Venue is appropriate under 28 U.S.C. § 1391 because the incidents giving rise to the underlying dispute occurred in South Carolina.

12.     This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § § 2201-2202, and Federal Rule of

Civil Procedure 57 to determine that Allstate has no duty to defend or indemnify the Defendants for all claims related to and arising out of the actions alleged in the underlying lawsuit styled *Fred Parker and Taras Michael Parker v. Darryl Jerome Mattison, Lawrence R. Meadows, Roderick M. Cummings, Zebulon Young, d/b/a First Family Funeral Home, First Family Funeral Home, LLC* ("Parker Lawsuit"), C.A. No. 2018-CP-24-00203, currently pending in the Court of Common Pleas for Greenwood County, South Carolina. A true and correct copy of the Complaint in the Parker Lawsuit is attached as **Exhibit A**, and the allegations of the Complaint are incorporated here by reference.

## FACTUAL BACKGROUND

### A.  Parker Lawsuit

13. The Parker Lawsuit alleges that Defendants Meadows, Cummings, Mattison, and Young were involved in the operation of First Family, which is funeral home that previously had facilities in Greenwood County and Spartanburg County in South Carolina.

14. The Parker Lawsuit alleges that Defendants Fred Parker and Taras Michael Parker entered into a contract with First Family to provide services in connection with the funeral and cremation of Plaintiffs' Decedent, Mary Alice Pitts Moore ("the Decedent"), in March 2015.

15. The Parker Lawsuit alleges that Defendants Meadows, Cummings, Mattison, and Young failed to properly perform the services under the contract in that the Decedent's body was not cremated following the funeral services and was rather placed into a locked, unrefrigerated storage room at First Family's facility in Spartanburg County, South Carolina at some point after the funeral services occurred in March 2015.

16. The Parker Lawsuit further alleges the Decedent's body was placed on a wooden board, covered with blankets, and surrounded by fragrant items, specifically placed there to mask the smell of the decomposing body and was left in the storage room for three years to rot.

17. Further, the Parker Lawsuit alleges the Decedent's body was discovered in the locked, unrefrigerated storage room on February 8, 2018.

18. With regard to the Defendants Meadows, Cummings, Mattison, and Young, the Parker Lawsuit alleges that they showed considerable malice since they knew that the Plaintiffs would suffer severe agony and emotional distress when confronted with the callousness, indifference, insults, and indignities of having the Decedent's body disintegrate in the storage room, among other things.

19. The Parker Lawsuit further alleges that Defendants Meadows, Cummings, Mattison, and Young breached their duties under the contract and/or express/implied agreement to conduct the services under the contract, including cremating the Decedent's body.

20. Further, the Parker Lawsuit alleges that Defendants Meadows, Cummings, Mattison, and Young acted intentionally, knowingly, maliciously, and fraudulently regarding the fact they lied to Fred Parker and Taras Michael Parker regarding their intentions under the contract, in holding themselves out as licensed funeral directors when they were not, in illegally conspiring to run funeral homes under the licenses of persons not involved in the actual funeral, and in never intended to cremate the Decedent's body.

21. In addition, the Parker Lawsuit alleges Defendants Meadows, Cummings, Mattison, and Young engaged in criminal acts in violation of South Carolina law and specifically in violation of Section 16-17-600 of the South Carolina Code of Laws.

22.     The Parker Lawsuit further alleges that as a result of the actions of Defendants Meadows, Cummings, Mattison, and Young, Defendants Fred Parker and Taras Michael Parker have suffered injuries to include severe emotional pain, anguish, and extreme emotional distress, anxiety, humiliation, embarrassment, shock, and overwhelm following the discovery of the Decedent's body on February 8, 2018.

### B.     The Policies

23.     Beginning in August 2, 2014, Allstate issued to the named insured "First Family Funeral Home LLC" Businessowners Policies for the following policy periods:

- Policy Number 648 187 215 for the August 4, 2014 to August 4, 2015 policy period, cancelled effective April 4, 2015 for the non-payment of premium;

- Policy Number 648 446 909 for the June 17, 2015 to June 17, 2016 policy period;

- Policy Number 648 446 909 for the June 17, 2016 to June 17, 2017 policy period;

- Policy Number 648 790 558 for the June 17, 2017 to June 17, 2018 policy period, cancelled effective August 22, 2017 for the non-payment of premium; and

- Policy Number 648 801 148 for the November 10, 2017 to November 10, 2018 policy period.

True and correct copies of these policies are attached as **Exhibits B**, **C**, **D**, **E**, and **F**.

24.     The policies have a limit of insurance for Liability and Medical Expenses per Occurrence of $1,000,000.

25.     The policies provide:

**Section II – LIABILITY**

**A.     Coverages**

**1.     Business Liability**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance

5

applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **(D)**. Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

\*\*\*\*

**(2)** To "personal and advertising injury" caused by an offense arising out of our business, but only if the offense was committed in the "coverage territory" during the policy period.

\*\*\*\*

6

26. The policies also include an endorsement entitled "Funeral Directors Professional Liability," ("PL Coverage") under form BP 08 02 01 10, which modifies the coverage provided under the policies and provides in relevant part:

> This endorsement modifies insurance provided under the following:
>
> BUSINESSOWNERS COVERAGE FORM
>
> **Section II – Liability** is amended as follows:
>
> **A.** For the insurance provided by this endorsement, all provisions under Paragraph **A.1. Business Liability** also apply to other injury.
>
> **B.** Paragraph **A. Coverages** also applies to "bodily injury", "property damage", "personal and advertising injury" or other injury arising out of the rendering of or failure to render professional services in connection with the insured's business as a funeral director.

27. The policies include the following pertinent definitions:

> **F.** **Liability And Medical Expenses Definitions**
>
> \*\*\*\*
>
> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> \*\*\*\*
>
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions to include any act or omission arising out of the rendering of or failure to render professional services as a funeral director.
>
> **14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offense:
>
> > **a.** False arrest, detention or imprisonment;
> >
> > **b.** Malicious prosecution;
> >
> > **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room,

7

        dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**    The use of another's advertising idea in your "advertisement" or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

****

17.    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

****

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged.

****

28.    The policies also include several exclusions from coverage and specifically provides, in pertinent part:

    **B.**    **Exclusions**

        **1.**    **Applicable To Business Liability Coverage**

8

> This insurance does not apply to:
>
> **a.     Expected Or Intended Injury**
>
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

29. The policies' PL Coverage also includes the following exclusions:

> **C.** With respect to the coverage provided by this endorsement, Paragraph **B. Exclusions** is amended as follows:
>
> > **1.** Paragraph **1.b. Contractual Liability** is replaced by the following:
> >
> > This insurance does not apply to:
> >
> > **b.** "Bodily injury," "property damage", "personal and advertising injury" or other injury for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.
> >
> > ****
> >
> > **3.** The following Exclusion is added:
> >
> > This insurance does not apply to:
> >
> > "Bodily injury", "property damage", "personal and advertising injury" or other injury arising out of a criminal act including but not limited to fraud committed by the insured or any person for whom the insured is legally responsible.

30. Defendants First Family, Meadows, Cummings, Mattison, and Young have made a claim seeking coverage under the policies in connection with the Parker Lawsuit and Allstate is currently defending them under a reservation of rights.

31. Allstate is entitled to a judicial declaration that it owes no duty of defense or indemnification to Defendants First Family, Meadows, Cummings, Mattison, and Young in connection with the Parker Lawsuit.

**FOR A FIRST CAUSE OF ACTION**
**<u>DECLARATORY JUDGMENT</u>**

32. The allegations contained in paragraphs 1 through 30 are incorporated as if fully stated here.

33. Allstate seeks a determination from this Court that it has no defense or indemnification obligations to Defendants First Family, Meadows, Cummings, Mattison, and Young under the policies in connection with the claims alleged against them in the Parker Lawsuit.

    **A.**     <u>**No Coverage Because There Was No Covered "Occurrence."**</u>

34. The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage to include any act or omission arising out of the rendering of or failure to render professional services as a funeral director."

35. Plaintiffs' claims in the Parker Lawsuit arise from the malicious, intentional, and fraudulent acts of the Defendants First Family, Meadows, Cummings, Mattison, and Young.

36. Further, Plaintiffs' claims in the Parker Lawsuit arise from the breaches of the contract and/or express/implied agreement to perform funeral services, including the cremation of the Decedent's body, by Defendants First Family, Meadows, Cummings, Mattison, and Young.

37. These alleged acts are not accidents.

38. Accordingly, the conduct alleged in the Parker Lawsuit giving rise to the losses alleged in the Parker Complaint is not an accident.

39. As a result, the Parker Lawsuit does not allege that Defendants Fred Parker and

Taras Michael Parker suffered damages as a result of an accident, so that no coverage arises under the policies.

### B. The Harmful Conditions Did Not Take Place During the Policy Period.

40. Under the policies, Allstate agreed to provide coverage for damages that the insured becomes legally obligated to pay because of bodily injury, property damage, or other injury caused by an occurrence and that occurs during the policy period or because of personal and advertising injury caused by an offense that arises out of the insured's business if the offense was committed during the policy period.

41. Per the allegations of the Parker Lawsuit, the Decedent's body was not discovered in the locked, unrefrigerated storage room until February 8, 2018 after which time Defendants Fred Parker and Taras Michael Parker were notified and began to suffer the alleged damages.

42. Therefore, because the claimed damages did not begin to occur until after the Decedent's body was discovered on February 8, 2018, the policies issued for the August 4, 2014 to August 2, 2015 (cancelled effective April 4, 2015), June 17, 2015 to June 17, 2016, June 17, 2016 to June 17, 2017, and June 17, 2017 to June 17, 2018 (cancelled effective August 22, 2017) policy periods do not afford coverage for the damages alleged in the Parker Lawsuit.

### C. Coverage For Losses Caused By Intentional or Criminal Acts Is Excluded.

43. The policies, including the applicable policy issued for the November 10, 2017 to November 17, 2018 policy period, include an exclusion for damages that are expected or intended from the standpoint of the insured.

44. Further, the policies, including the applicable policy issued for the November 10, 2017 to November 17, 2018 policy period, include an exclusion for damages that arise out of a criminal act including but not limited to fraud committed by the insured or for any person for whom

11

the insured is legally responsible.

45. Per the allegations of the Complaint filed in the Parker Lawsuit, Defendants Fred Parker and Taras Michael Parker seek to recover damages from Defendants First Family, Meadows, Cummings, Mattison, and Young as a result of their allegedly malicious, intentional, and fraudulent acts.

46. Further, per the allegations of the Complaint filed in the Parker Lawsuit, Defendants Fred Parker and Taras Michael Parker seek to recover damages from Defendants First Family, Meadows, Cummings, Mattison, and Young as a result of the violation of Section 16-17-600 of the South Carolina Code of Laws, entitled "Destruction or desecration of human remains or repositories; liability of crematory operators; penalties, which provides in part:

> **(A)** It is unlawful for a person willfully and knowingly, and without proper legal authority to:
>
> **(1)** destroy or damage the remains of a deceased human being;
>
> **(2)** remove a portion of the remains of a deceased human being from a burial ground where human skeletal remains are buried, a grave, crypt, vault, mausoleum, Native American burial ground or burial mound, or other repository; or
>
> **(3)** desecrate human remains.
>
> A person violating the provisions of subsection (A) is guilty of a felony and, upon conviction, must be fined not more than five thousand dollars or imprisoned not less than one year nor more than ten years, or both.
>
> ****

47. Further, Section 40-19-30 of the South Carolina Code of Laws, entitled "Required licenses; permit restrictions regarding unlicensed persons; exemption" provides:

> It is unlawful for a person to engage in the practice of funeral service unless the person is licensed in accordance with this chapter. A person who engages or participates actively in directing or in the management of a funeral establishment is considered to be in the practice of funeral service.

12

> No permit to operate a funeral home may be issued to a corporation, partnership, or individual when the name of an unlicensed person appears in the name of the corporation, partnership, or individually owned business. This prohibition does not apply to established funeral homes existing prior to July 1, 1969

48. Defendants Fred Parker and Taras Michael Parker allege the injuries sustained by them were expected in that Defendants First Family, Meadows, Cummings, Mattison, and Young knew that they would suffer severe agony and emotional distress once they discovered what occurred.

49. Defendants Fred Parker and Taras Michael Parker allege the damages being sought in the Parker Lawsuit result from the intentional acts committed by Defendants First Family, Meadows, Cummings, Mattison, and Young.

50. Defendants Meadows and Cummings have been criminally charged under Section 16-17-600 of the South Carolina Code of Laws.

51. Defendant Meadows did not have a valid funeral director's license at the time Defendants Fred Parker and Taras Michael Parker entered into the contract with First Family to provide funeral services, including cremation, because his license was suspended before the Decedent's death that occurred in March 2015.

52. Defendant Cummings was an apprentice funeral director at the time Defendants Fred Parker and Taras Michael Parker entered into the contract with First Family to provide funeral services, including cremation, and was required by South Carolina law to be supervised by a licensed funeral director.

53. Because neither Defendants Meadows nor Cummings was a licensed funeral director, First Family was operating under and providing services under the licenses of Defendants Mattison and Young such that Defendants Mattison and Young were legally responsible for the conduct of Defendants Meadows and Cummings under South Carolina law.

54. Because the damages alleged in the Parker Lawsuit resulted from the intentional and/or criminal acts of Defendants First Family, Meadows, Cummings, Mattison, and Young, Allstate has no duty to defend or indemnify Defendants First Family, Meadows, Cummings, Mattison, and Young in connection with the Parker Lawsuit.

### D. No Duty to Defend

55. Under the policies, including the applicable policy issued for the November 10, 2017 to November 17, 2018 policy period, Allstate agreed to provide a defense to the insured for damages to which the insurance applies and does not have a duty to defend the insured against any suit seeking damages to which the insurance does not apply.

56. Because there is no coverage under the policies, including the applicable policy issued for the November 10, 2017 to November 17, 2018 policy period, no duty to defend Defendants First Family, Meadows, Cummings, Mattison, and Young arises under any of the policies.

WHEREFORE, a justiciable controversy exists between the parties in this action arising out of these claims. Therefore, Allstate asks this Court to construe and determine the rights of the parties and to declare that:

a. The policies issued by Allstate to Defendant First Family provides no coverage for the claims asserted in the Parker Lawsuit; and

b. Allstate has no duty to defend or indemnify Defendants First Family, Meadows, Cummings, Mattison, and Young for the claims asserted in the Parker Lawsuit.

Allstate prays that it be granted the relief set forth above, the costs of this action, and any such other and further relief as this Court shall deem just and proper.

*{Signature on next page}*

GALLIVAN, WHITE & BOYD, P.A.

By: */s/ A. Johnston Cox*
    A. Johnston Cox (Fed. I.D. No. 6534)
    Janice Holmes (Fed. I.D. No. 11366)
    1201 Main Street, Suite 1200
    Post Office Box 7368
    Columbia, South Carolina 29202
    Telephone:  803-779-1833
    Facsimile:   803-779-1767
    jcox@GWBlawfirm.com
    jholmes@GWBlawfirm.com

Attorneys for Allstate Insurance Company

Columbia, South Carolina
June 10, 2019